### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**BILL JOSEPH CHAVEZ,**

      **Plaintiff,**

      **vs.**                                      **Civ. No. 22-169  JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

### <u>MEMORANDUM OPINION AND ORDER[1]</u>

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 19)[2] filed June 10, 2022, in connection with Plaintiff's *Motion to Reverse and Remand, With Supporting Memorandum,* filed December 29, 2022.  Doc. 29.  Defendant filed a Response on March 24, 2023.  Doc. 35.  Plaintiff filed a Notice of Completion of Briefing on April 19, 2023.  Doc. 38.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is not well taken and is **DENIED**.

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 13, 14, 15.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 19), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

## I.  Background and Procedural Record

Plaintiff Bill Joseph Chavez (Mr. Chavez) alleges that he became disabled on October 1, 2014, at the age of fifty-nine years and eight months because of severe obstructive sleep apnea, hypertension, high blood pressure, dyspnea and carpal tunnel syndrome.  Tr. 128-29.  Mr. Chavez completed four or more years of college.[3]  Tr. 477.  Mr. Chavez worked as a canvasser, loan originator, mortgage broker/banker, and customer service representative.  Tr. 477.  Mr. Chavez stopped working on August 24, 2014, due to his medical conditions.  Tr. 476.

On April 18, 2016, Mr. Chavez filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 27, 174-77.  On May 26, 2016, Mr. Chavez's application was denied.  Tr. 127-128-43, 186-89.  On August 29, 2016, it was denied again at reconsideration.  Tr. 144, 145-61, 193-95.  Upon Mr. Chavez's timely request, Administrative Law Judge (ALJ) Cole Gerstner held a hearing on August 14, 2018.  Tr. 77-121.  Mr. Chavez appeared with attorney representative Thomas Benson.[4]  *Id*.  On October 5, 2018, ALJ Gerstner issued an unfavorable decision.  Tr. 162-74.  On November 5, 2019, the Appeals Council remanded Mr. Chavez's case based solely on Mr. Chavez's date of last insured having been incorrectly calculated.  Tr. 181-85.  On September 14, 2021, ALJ Michael Leppala held a second administrative hearing.  Tr. 14-28.  On September 28, 2021, ALJ Leppala issued an unfavorable decision.  Tr. 14-28.  On February 8,

---

[3] Mr. Chavez reported completing four or more years of college and testified on August 14, 2018, that he received a Bachelor's Degree in Business Communications.  Tr. 86, 477.  On September 14, 2021, Mr. Chavez testified he did not have a college degree and that he completed two years of junior college after graduating high school.  Tr. 54.

[4] Mr. Chavez is represented in these proceedings by Attorney Feliz MariSol Martone.  Doc. 1.

2022, the Appeals Council denied Mr. Chavez's request for review.  Tr. 1-7.  On March 7, 2022, Mr. Chavez timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II.  <u>Applicable Law</u>

### A.  <u>Disability Determination Process</u>

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

## B.   <u>Standard of Review</u>

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on

substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ determined that Mr. Chavez met the insured status requirements of the Social Security Act through December 31, 2020, and that he had engaged in substantial gainful activity during the period from his alleged onset date of October 1, 2014, through his date last insured.[6] Tr. 19.  He found that Mr. Chavez had severe impairments of degenerative disc disease of the lumbosacral spine, hypertension, carpal tunnel syndrome, left foot dysfunction, obesity, obstructive sleep apnea, and depression.  Tr. 19.  The ALJ determined that Mr. Chavez's

---

[6] The ALJ noted that Mr. Chavez worked after his alleged onset date, but that his work activity did not rise to the level of substantial gainful activity.  *Id.*  The ALJ further noted that "[t]he Claimant's earnings in 2017 were SGA (45D). However, there have been several years after 2014 that were not SGA."  *Id.*

impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 20-22.  Accordingly, the ALJ proceeded to step four and found that Mr. Chavez had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that

> [c]laimant is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks.  He is further limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, frequently balancing, kneeling, crouching, and crawling.  The Claimant is limited to frequently feeling and fingering with [his] right hand.  He is limited to occasional exposure to unprotected heights, moving machinery, dangerous machinery, and vibration.  The Claimant can understand, carry out, and remember simple and detailed instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in the work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.

Tr. 22.  The ALJ determined that considering Mr. Chavez's age, education, work experience, and residual functional capacity, that Mr. Chavez was capable of performing his past relevant work as a canvasser and customer service representative through his date last insured.  Tr. 28.  The ALJ determined, therefore, that Mr. Chavez was not disabled.  *Id.*

In support of his Motion, Mr. Chavez argues that (1) the ALJ erred by failing to make a connection between his impairments and the RFC; (2) the ALJ failed to account for the moderate limitations in functioning found at steps two and three in the RFC; and (3) the ALJ failed to properly evaluate the medical opinion evidence.  Doc. 29 at 6-19.

For the reasons discussed below, the Court finds that the ALJ applied the proper legal standards in evaluating the evidence and that his RFC determination is supported by substantial evidence.  The Court, therefore, will affirm the Commissioner's final determination and deny Mr. Chavez's Motion to Remand.

### A.    Relevant Medical Evidence

#### 1.    Nonexamining State Agency Medical Consultants

##### a.    Mark A. Werner, M.D.

On May 25, 2016, nonexamining State agency medical consultant Mark A. Werner,

M.D., reviewed the medical evidence record at the initial stage of consideration.  Tr. 137-40.

Dr. Werner assessed that Mr. Chavez could perform medium exertional work except that he

could frequently climb ladders/ropes/scaffolds, stoop, kneel, crouch and crawl.[7]  *Id.*  He also

limited Mr. Chavez's right hand fingering due to right carpal tunnel syndrome.  *Id.*

##### b.    Sean Neely, D.O.

On August 26, 2016, nonexamining State agency medical consultant Sean Neely, D.O.,

reviewed the medical evidence record at reconsideration.  Tr. 155-59.  Dr. Neely affirmed

Dr. Werner's opinion.  *Id.*

The ALJ accorded Dr. Werner's and Dr. Neely's RFC assessments *some weight*.  Tr. 25.

He explained in discounting their assessments that Mr. Chavez's degenerative disc disease limits

his ability to lift and carry in an eight-hour workday; that the degenerative disc disease, along

with Mr. Chavez's more recent foot pain, were inconsistent with the ability to climb ladders,

ropes, and scaffolds frequently; and that no environmental limitations was not entirely consistent

with Mr. Chavez's obstructive sleep apnea requiring a CPAP device.  *Id.*  The ALJ concluded,

therefore, that Dr. Werner and DO Neely did not adequately consider the impact of these

---

[7] Work at the medium exertional level is defined as having the capacity to lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; stand or walk 6 hours in an 8 hour workday; and sit 6 hours in an 8 hour workday.  *See* 20 C.F.R. § 404.1567(c).  "Occasionally" means occurring from very little up to one-third of the time. SSR 83-10 at *5.  "Frequent" means occurring from one-third to two-thirds of the time.  *Id.*

conditions on Mr. Chavez's functional limitations and that a RFC for modified light exertional work was necessary.

### 2.      Nonexamining State Agency Psychological Consultants

#### a.      Jill Blacharsh, M.D.

On May 26, 2016, nonexamining State agency psychological consultant Jill Blacharsh, M.D., reviewed the medical evidence record at the initial stage of consideration.  Tr. 134-36. Dr. Blacharsh prepared a Psychiatric Review Technique and rated the degree of Mr. Chavez's mental impairments in the area of restriction of activities of daily living as *mild*; in the area of maintaining social functioning as *mild*; in the area of maintaining concentration, persistence and pace as *mild*; and in the area of repeated episodes of decompensation as *none*.  *Id.*  She assessed that "a review of all the evidence shows the clmt's mental status is currently intact and there is no evidence of any severe mental status abnormalities.  There is no evidence of any severe limitation of functioning because of a mental impairment.  Non-severe."  *Id.*  Dr. Blacharsh did not prepare a Mental Residual Functional Capacity Assessment.

#### b.      Randy Cochran, Psy.D.

On August 23, 2016, nonexamining State agency psychological consultant Randy Cochran, Psy.D., reviewed the medical evidence record at reconsideration.  Tr. 153-54. Dr. Cochran noted that

> [a]t Reconsideration, clmt reported no worsening in [his] mental condition, and identified no new medical conditions.  No new MER was submitted relevant to the clmt's mental impairment.  Clmt submitted no updated description of functioning, but on 3441 clmt reported no change in daily activities due to his mental conditions.
>
> A review of the evidence received does not change or further restrict the claimant's initial mental rating dated 5/26/16.

*Id.*

The ALJ accorded Dr. Blacharsh's and Dr. Cochran's opinions *some weight*.  Tr. 25.  He explained in discounting their opinions that they did not adequately consider the impact of Mr. Chavez's mental conditions on his ability to do work-related mental activities.  *Id.*  He also noted that their opinions were rendered before more consistent treatment and medications for depression since 2019.  *Id.*

### 3.  Treating Physician Mona Abousleman, M.D.

#### a.  November 25, 2014 through August 14, 2015

On November 25, 2014, Ms. Chavez presented to Romero Family Medicine to establish care and saw Family Practitioner Mona Abousleman, M.D.  Tr. 637-38.  Mr. Chavez reported a medical history including a recent cardiology exam and tests related to preoperative clearance for a colonoscopy scheduled in December 2014;[8] osteoarthritis in his lower back and related physical therapy that was helping;[9] [10] benign prostatic hyperplasia; hypertension; a recent

---

[8] On November 7, 2014, Mr. Chavez presented to Cardiologist Jane E. Schauer, M.D., for preoperative exam for colonoscopy.  Tr. 800-02.  Mr. Chavez was referred by gastroenterologist Linda Grossman.  *Id.*  Mr. Chavez complained of intermittent chest discomfort and trouble breathing with walking, as well as trouble breathing lying flat in bed.  *Id.*  Mr. Chavez reported having sleep apnea and hypertension.  *Id.*  Dr. Schauer assessed symptoms of chest discomfort and dyspnea on exertion with hypertension and obesity as risk factors.  *Id.*  Dr. Schauer recommended a nuclear stress imaging study because Mr. Chavez "does little in the way of any activity, so I cannot get a good feel for his functional status."  *Id.*

On January 13, 2015, Dr. Schauer indicated a diagnosis of coronary disease noted on a recent nuclear stress imaging study.  Tr. 785-87.  She indicated that the nuclear stress imaging study "demonstrates preserved left ventricular function and it is a low risk scan, but it does have a small area of reversibility on it.  That scan was from November 24, 2014, demonstrating small apical lateral defect and certainly that could be consistent with apical thinning as well."  Tr. 786.  Mr. Chavez was offered cardiac catheterization versus continued medial management and opted for medical management.  *Id.*

[9] On October 24, 2014, radiologic studies of Mr. Chavez's "spine lumbar" indicated subtle scoliosis of the lumbar spine, mild narrowing of the L3-4, L4-5, and L5-S1 interspaces, and anterolateral osteophytes of the visualized lower thoracic and lumbar vertebra.  Tr. 590.

[10] On September 17, 2014, DO Edward Childers of Hands on Healthcare referred Mr. Chavez for physical therapy based on reported pain in middle region of back.  Tr. 602-06.  Mr. Chavez presented for physical therapy on October 8, 2014, and completed sixteen PT sessions by February 9, 2015.  Tr. 783-85, 787-800, 802-10.  On February 9, 2015,

obstructive sleep apnea diagnosis;[11] and lab studies demonstrating impaired fasting glucose. *Id.*
Mr. Chavez reported taking Doxasozin for benign prostatic hyperplasia and Losartan and
Metoprolol for hypertension. *Id.* Dr. Abousleman's physical exam notes were unremarkable.
*Id.* She assessed hypertension, impaired fasting glucose, sleep apnea, and benign prostatic
hyperplasia, and continued Mr. Chavez on his prescribed medications. *Id.* She planned to
discuss healthy nutrition, request "old records," and instructed Mr. Chavez to return in three
weeks. *Id.*

Mr. Chavez returned on December 12, 2014. Tr. 641-44. Dr. Abousleman's physical
exam notes were unremarkable. *Id.* She assessed unspecified sinusitis, hypertension, coronary
atherosclerosis of native coronary artery, and impaired fasting glucose. *Id.* She prescribed
Flonase and refilled other prescriptions. *Id.* Dr. Abousleman counseled Mr. Chavez on nutrition
and preventive medicine. *Id.*

On February 13, 2015, Mr. Chavez presented to Romero Family Medicine for group
nutrition counseling related to his impaired fasting glucose, coronary atherosclerosis and morbid
obesity. Tr. 645-47.

On May 8, 2015, Mr. Chavez followed up with Dr. Abousleman and newly complained
of right hand carpal tunnel syndrome and paresthesia in both anterior thighs. Tr. 650-52.
Dr. Abousleman encouraged Mr. Chavez to continue a high fiber diet, to exercise, and to lose

---

Mr. Chavez was discharged. Tr. 783. He reported on February 9, 2015, that his back was doing pretty good and that
he was healthier and had more energy. *Id.*

[11] On May 7, 2014, Mr. Chavez presented to the Presbyterian Sleep Disorders Clinic to discuss having a sleep
evaluation. Tr. 815-17. On October 31, 2014, Mr. Chavez presented for sleep evaluation. Tr. 633-35. The sleep
study reflected, *inter alia*, obstructive sleep apnea, severe; sleep related hypoxemia, moderate; and decreased sleep
efficiency. *Id.*

weight.  *Id.*  She referred Mr. Chavez to a pain specialist for treatment options related to carpal

tunnel syndrome and anterior thigh neuropathy.[12]  *Id.*

On March 15, 2015, Mr. Chavez presented to Dr. Abousleman with complaints of lower

thoracic back pain.  Tr. 654-55.  On physical exam, Dr. Abousleman noted normal gait and tone.

*Id.*  She referred Mr. Chavez to physical therapy.[13]

On May 28, 2015, Mr. Chavez saw Dr. Abousleman for follow up on lab studies.  Tr.

657-59.  Dr. Abousleman assessed impaired fasting glucose, unspecified essential hypertension,

coronary atherosclerosis, and morbid obesity.  *Id.*  She continued Mr. Chavez on prescribed

medications and encouraged him to eat at home, control his portions, and to eat more vegetables.

*Id.*

---

[12] On June 23, 2015, Mr. Chavez presented to Interventional Pain Specialist Timothy E. Hansen, D.O., for evaluation and possible treatment of Mr. Chavez's reported right hand pain with numbness and tingling and occasional burning on his right anterolateral thigh.  Tr. 730-31.  Mr. Chavez reported that overall he is "relatively healthy" with the exception of hypertension which is well controlled on Losartan and Metoprolol.  *Id.*  Following physical exam, DO Hansen diagnosed right carpal tunnel syndrome and symptoms consistent with right meralgia paresthetica. *Id.*  DO Hansen discussed and Mr. Chavez agreed to injection therapy for carpal tunnel syndrome.  *Id.*  DO Hansen also encouraged Mr. Chavez to use a splint for the next few days to augment his treatment.  *Id.*

On September 17, 2015, Mr. Chavez  returned to DO Hansen and reported the injection had been very effective in reducing a lot of numbness and tingling in his middle finger and thumb, but that he still had some tingling in his right index finger although less than before.  Tr. 729.  DO Hansen recommended and Mr. Chavez agreed to a second injection.  *Id.*  DO Hansen noted that he advised Mr. Chavez it could take several days to a week for the injection to be fully effective and that if this injection does not provide the kind of results he is looking for that he will advise he look into a surgical solution.  *Id.*

On December 29, 2015, Mr. Chavez saw DO Hansen and reported that the injection therapy was effective for eliminating some of the numbness and tingling in his fingers, but that pressure or contact with the wrist area causes sharp discomfort into his middle and index finger.  Tr. 728.  DO Hansen recommended Mr. Chavez seek a surgical solution.  *Id.*

On February 12, 2021, Mr. Chavez had a scope-assisted median nerve decompression right carpal tunnel.  Tr. 1041-42.  On May 10, 2021, Mr. Chavez reported doing better since surgical intervention, experiencing no pain post-operatively, not experiencing any numbness, and a pain level of 0/10.  Tr. 1037.

[13] On May 19, 2015, Mr. Chavez presented to Armada Physical Therapy of Albuquerque.  Tr. 683-83.  Mr. Chavez completed ten PT sessions from May 19, 2015, through July 17, 2015.  On July 17, 2015, Mr. Chavez stated he had no lower back pain.  Tr. 700.

On August 14, 2015, Mr. Chavez saw Dr. Abousleman with complaints of a recently resolved viral illness and ongoing left-sided neck pain.  Tr. 672-74.  Mr. Chavez requested and Dr. Abousleman provided a referral for physical therapy.[14]  *Id.*  Mr. Chavez also requested and Dr. Abousleman provided a letter to Mr. Chavez's school that included his diagnoses.[15]  *Id.*  The "To Whom It May Concern" letter read as follows:

> Bill Chavez is a patient in my office.  Please be aware that his diagnosis [sic] includes obstructive sleep apnea and hypertension.  These medical problems and the medications used to treat them can affect his attention and level of fatigue.  Unfortunately, those factors can interfere periodically with his successful completion of schoolwork.  I appreciate your understanding of this matter.

Tr. 676.

The ALJ gave *little weight* to this letter and explained that Dr. Abousleman's statement "is too general and does not assess the Claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, bend, stoop, kneel, etc. in an eight-hour workday.  Therefore, the physician's statement is not useful for disability cases under Social Security regulations."  Tr. 27.

### b.   August 28, 2015 through September 23, 2016

Mr. Chavez next saw Dr. Abousleman on August 28, 2015, and complained of dizziness and lightheadedness, followed by a cold sweat.  Tr. 678-80.  Dr. Abousleman's physical exam notes were unremarkable.  *Id.*  Dr. Abousleman referred Mr. Chavez to cardiology for a stress

---

[14] On August 25, 2015, Mr. Chavez presented to Armada Physical Therapy of Albuquerque with complaints of constant aching pain on the left side of his neck.  Tr. 702-03.  Mr. Chavez attended six physical therapy sessions from August 25 2015, through October 16, 2015.  Tr. 702-14.  On October 16, 2015, Mr. Chavez reported that he had been loading and unloading his truck without complaints of pain.  Tr. 714.  Physical Therapist Shirley Hillmeyer noted that Mr. Chavez was able to complete all tasks without complaining of increased pain.  *Id.*  Mr. Chavez was discharged from physical therapy.  *Id.*

[15] On April 29, 2016, Mr. Chavez reported attending school at Central New Mexico Community College/UNM.  Tr. 495.  He stated in his Function Report that during the week he would check on classwork from 7:30 a.m. until 1:00 p.m., take a lunch hour, and then complete homework from 2:00 p.m. until 6:00 p.m.  Tr. 495-96.

echocardiogram.[16]  *Id.*  Mr. Chavez saw Dr. Abousleman twice more in 2015.  Tr. 717-20, 722-

25.  On December 14, 2015, Mr. Chavez reported chronic sinusitis and ongoing dizziness.  Tr.

717-20.  Dr. Abousleman referred Mr. Chavez to an ENT and encouraged him to drink more

water.  *Id.*  On December 17, 2015, Mr. Chavez reported ongoing depression with symptoms of

fatigue, reduced energy, anhedonia, irritability, guilt and poor concentration.  Tr. 722-25.

Dr. Abousleman noted that Mr. Chavez was pleasant, alert, cooperative, and had normal speech

and affect.  *Id.*  She assessed, *inter alia,* major depressive disorder, single episode, unspecified,

and prescribed Lexapro.  *Id.*

　　Mr. Chavez saw Dr. Abousleman twice in 2016.  Tr. 733-35, 853-54.  On January 8,

2016, Mr. Chavez reported having poor focus at times at school, particularly when testing.  *Id.*

He asked Dr. Abousleman to provide a letter stating that his medical problems can contribute to

this and that he be given special testing accommodations.  *Id.*  Dr. Abousleman assessed, *inter*

*alia,* fatigue and noted that "[p]t has multiple medical conditions that can cause fatigue.  A letter

was written in support of him receiving special testing accommodations while at school."[17]  *Id.*

She also assessed that Mr. Chavez's sleep apnea and hypertension were stable; that Mr. Chavez

---

[16]  On August 31, 2015, Mr. Chavez presented to Leonardo Macias, M.D., who suspected Mr. Chavez's symptoms were "mainly driven by some deconditioning and maybe still a contribution from sleep apnea."  Tr. 779-80. Dr. Macias, however, planned to order an echocardiogram to determine Mr. Chavez's ventricular function.  *Id.*

On September 30, 2015, Mr. Chavez presented to Dr. Macias for an echocardiogram and N-terminal pro-BNP.  Tr. 777-78.  Mr. Chavez reported that his shortness of breath was improved and he was having less episodes of dizziness. *Id.*  On physical exam, Dr. Macias noted that Mr. Chavez "appears healthy."  *Id.*  Dr. Macias noted that "[e]chocardiogram today reveals a normal left ventricular systolic function with a normal ejection fraction of 60%. His diastolic filling parameters indicate abnormal relaxation that would suggest normal filling pressures."  *Id.* Dr. Macias assessed dyspnea arising "more from his uncontrolled hypertension in the past, but now has been markedly improved.  Also, sleep apnea could still be contributing to his symptoms, despite his CPAP therapy."  *Id.*  Dr. Macias discussed that Mr. Chavez should be aggressively controlling his risk factors, *i.e.,* hypertension, as well as focusing on his diet, exercise, and weight loss.  *Id.*  Dr. Macias instructed Mr. Chavez to return in one year.  *Id.*

[17] The Administrative Record does not contain evidence of this letter.

planned to see an orthopedic surgeon about his carpal tunnel syndrome; and that he had just

started on Lexapro and still building to full effect.  *Id.*  On August 4, 2016, Mr. Chavez reported

multiple changing moles on his left temple and wanted a dermatology referral.  Tr. 853-54.

Mr. Chavez reported that he tried Lexapro for three to four weeks but discontinued it for lack of

improvement.  *Id.*  Mr. Chavez reported better sleep on CPAP.  *Id.*  Dr. Abousleman provided

Mr. Chavez with a list of counselors and psychiatry offices for his depression,[18] referred

Mr. Chavez to dermatology, and indicated his hypertension was stable.  *Id.*

On September 23, 2016, Dr. Abousleman prepared a second "To Whom It May Concern"

letter in which she stated

> Bill Chavez is a patient under may care.  He has multiple medical problems,
> including low back pain, obstructive sleep apnea, and carpel tunnel syndrome.
> These medical problems make it difficult for him to sit for prolonged periods of
> time, do physical labor and work on a computer multiple hours daily.  The
> combination of these problems make him unable to work in a full or part time
> setting.

Tr. 857.

The ALJ accorded this letter *some weight*.  Tr. 27.  He explained that Dr. Abousleman's

assessment does not quantify "prolonged sitting" in vocationally relevant terms, *i.e.,*

continuously, frequently, or occasionally in an eight-hour workday.  *Id.*  The ALJ explained that

Dr. Abousleman's statement is not supported by her physical exam findings or by Mr. Chavez's

own function report in which he reported engaging in online education for several hours per day.

---

[18] On July 3, 2018, Rio Grande Counseling & Guidance Services provided a one-page *Records Summation & Treatment Confirmation*.  Tr. 907.  This document indicates that Mr. Chavez received general counseling from August 17, 2016 through April 19, 2017 with a working diagnosis of persistent depressive disorder.  *Id.*

*Id.*  The ALJ also explained that an opinion on whether a claimant is disabled is an issue reserved to the Commissioner.  *Id.*

### c.    January 27, 2017 through January 14, 2019

On January 27, 2017, Mr. Chavez requested another ENT referral for chronic sinusitis and to physical therapy for lower back pain.  Tr. 861-63.  Mr. Chavez reported gaining twenty pounds in 2016, and that he was not motivated to make any significant change.  Dr. Abousleman noted that Mr. Chavez was not eating fruits and vegetables and was not exercising as recommended.  *Id.*  She noted that Mr. Chavez sits most of the day in front of the computer attending online classes.  *Id.*  On physical exam she noted Mr. Chavez was pleasant, alert, cheerful, cooperative and had normal gait and normal musculoskeletal tone.  *Id.*  She continued Mr. Chavez on prescribed medications for hypertension, provided a referral to an ENT[19] and for physical therapy,[20] and ordered laboratory studies.  *Id.*  Mr. Chavez saw Dr. Abousleman twice more in 2017, on April 21 and October 3.  Tr. 865-69, 870-74.  On April 21, Mr. Chavez requested another ENT referral for ringing in his ears and to a urologist for frequent urination and leakage.  Tr. 865-69.  Mr. Chavez also brought a disability assessment form and requested that Dr. Abousleman complete it on his behalf.  *Id.*  Dr. Abousleman's physical exam notes were unremarkable.  *Id.*  Dr. Abousleman made the requested referrals and advised Mr. Chavez that he would need to go to a disability doctor to have his disability form completed.  *Id.*  On October 3,

---

[19] On April 27, 2017, Mr. Chavez underwent nasoseptal reconstruction and bilateral submucous resection inferior turbinates.  Tr. 883-84.

[20] On October 3, 2017, Dr. Abousleman noted that she referred Mr. Chavez to physical therapy in January but he never went.  Tr. 870.

Mr. Chavez complained of lower back pain.  Tr. 870-74.  On physical exam, Dr. Abousleman noted "[n]o vertebral tenderness, mild Paraspinal tenderness at waistline.  Negative SLR and Faber's Bilaterally."  *Id.*  She also noted normal gait and tone and 5/5 motor strength bilaterally.  *Id.*  Dr. Abousleman provided Mr. Chavez with a referral to physical therapy and reminded him that "this is usually a chronic recurrent issue that is best controlled [with] regular daily – weekly exercise."[21]  *Id.*

Mr. Chavez saw Dr. Abousleman once in 2018 for a physical exam.  Tr. 875-80.  On February 27, 2018, Mr. Chavez's reported no depression and "0" on the pain scale.  *Id.*  Dr. Abousleman noted that her physical exam of Mr. Chavez was "without abnormal findings."  *Id.*  She noted, *inter alia*, that Mr. Chavez's hypertension, impaired fasting glucose, and benign prostatic hyperplasia were stable.  *Id.*  She indicated that Mr. Chavez was due for lab work.  *Id.*

On January 14, 2019, Dr. Abousleman prepared a third "To Whom It May Concern" letter on Mr. Chavez's behalf as follows:

> Bill Chavez is a patient under my care.  He has multiple medical conditions, including low back pain, carpal tunnel syndrome, and chronic major depression that affect his daily life.  These conditions significantly limit his ability to sit for prolonged periods at a computer or at a desk on the phone and do manual labor.  He became my patient in November of 2014 and since that time has been struggling with these conditions.  They have kept him from being able to work on any consistent basis and keep gainful employment.

Tr. 944.

The ALJ gave this letter *some weight*.  Tr. 27.  He explained that Dr. Abousleman's assessment does not quantify "prolonged sitting" in vocationally relevant terms, *i.e.,*

---

[21] Dr. Abousleman referred Mr. Chavez to Armada Physical Therapy.  Tr.  873.  The Administrative Record does not contain evidence of Mr. Chavez attending physical therapy based on this referral.

continuously, frequently, or occasionally in an eight-hour workday.  *Id.*  The ALJ explained that Dr. Abousleman's statement is not supported by her physical exam findings or by Mr. Chavez's own reports of engaging in online education and spending most of his days in front of a computer.  *Id.*  The ALJ explained that Dr. Abousleman's statement appears to be based on Mr. Chavez's own subjective reports rather than clinical findings.  *Id.*  The ALJ also explained that Mr. Chavez was not compliant with treatment, *i.e.,* not attending physical therapy, not exercising, and not following a recommended diet.  *Id.*  Finally, the ALJ explained that an opinion on whether a claimant is disabled is an issue reserved to the Commissioner.  *Id.*

### d.      March 5, 2019 through December 22, 2020

Mr. Chavez saw Dr. Abousleman once in 2019.  Tr. 1026.  On April 11, 2019, Mr. Chavez saw Dr. Abousleman for the purpose of asking her to complete disability forms on his behalf.  *Id.*  Dr. Abousleman noted she was unable to do so.  *Id.*

Mr. Chavez saw Dr. Abousleman four times in 2020 with complaints of flu-like symptoms, nose bleeds, an upper respiratory infection, and a request to restart Lexapro.  Tr. 1004-05, 1006, 1008, 1012-13.

### 4.      Rio Grande Counseling & Guidance Services

On July 3, 2018, Rio Grande Counseling & Guidance Services prepared a one-page *Records Summation & Treatment Confirmation*.  Tr. 907.  This document indicates that Mr. Chavez received general counseling from August 17, 2016 through April 19, 2017, with a working diagnosis of persistent depressive disorder.  *Id.*  The document identified LCSW Gilkey as Mr. Chavez's counselor.  *Id.*  The narrative stated that  "Mr. Chavez's symptoms of Persistent Depressive Disorder have caused significant distress and impairment for him and in turn do not allow him the ability to maintain gainful employment."  *Id.*

The ALJ accorded *no weight* to this opinion.  Tr. 26.  The ALJ explained that this one-page document does not describe Mr. Chavez's symptoms or provide the rationale for his discharge.  *Id.*  The ALJ also explained that LCSW Gilkey is not an acceptable medical source under the applicable rules and that, even if she were, she opined on an issue reserved for the Commissioner.  *Id.*

**5.**    **Treating Psychologist Esther D. Davis, Ph.D.**

The Administrative Record contains seven progress notes prepared by Dr. Davis from February 15, 2021, through May 10, 2021.[22]  Tr. 1053-59.  Dr. Davis indicates a diagnosis of major depressive disorder.  *Id.*

On June 28, 2021, Dr. Davis prepared a *Medical Source Statement of Ability To Do Work-Related Activities (Mental)* on Mr. Chavez's behalf.  Tr. 1060-64.  She assessed that he is *not significantly limited* in his ability to (1) remember locations and work-like procedures; (2) be aware of normal hazards and take appropriate precautions; and (3) travel in unfamiliar places and/or to use public transportation; *mildly limited* in his ability to (1) understand and remember very short and simple one- or two-step repetitive instructions or tasks; (2) carry out short and simple (one- or two-step) instructions or tasks; (3) make simple work-related decisions; (4) interact appropriately with the general public or customers; (5) ask simple questions or request assistance from supervisors; and (6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; *moderately limited* in his ability to (1) understand and remember detailed instructions or tasks which may or may not be repetitive; (2) carry out

---

[22] Mr. Chavez's date of last insured is December 31, 2020.  Tr. 19.

detailed instructions which may or may not be repetitive; (3) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being unduly distracted by them; (6) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and (7) set realistic goals or to make plans independently of others; and *markedly limited* in his ability to (1) maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure) with four such periods in a workday; (2) complete a workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) accept instructions and to respond appropriately to criticism from supervisors; and (4) respond appropriately to expected or unexpected changes in the work setting.  *Id.*

The ALJ accorded Dr. Davis's opinion *some weight*.  Tr. 26.  The ALJ explained that the treating relationship was "rather short," and that the marked limitations were not supported by the objective findings in the record.  *Id.*  The ALJ explained that mental status exams in the medical evidence record demonstrate that Mr. Chavez was alert, oriented and answering questions appropriately, with no evidence of deficits in memory, attention or concentration.  *Id.* The ALJ explained that Mr. Chavez was able to cooperate and talk with his doctors and engage in online education for several hours per day.  *Id.*  The ALJ also explained that Mr. Chavez expressed improvement in his depression when taking his medication.  *Id.*  The ALJ concluded that the overall record tends to support mild to moderate, rather than marked limitations.  *Id.*

B. <u>**RFC Assessment**</u>

Mr. Chavez first argues that the ALJ erred by failing to make a connection between his impairments and the RFC assessment.  Doc. 29 at 6.  Mr. Chavez cites his function report in which he described, *inter alia*, his average day, slow personal care, feeling fatigued throughout the day, needing reminders for his medications, needing encouragement to do household chores and yardwork, changing moods, a limited ability to pay attention, and an inability to do regular activities or social activities due to a constant feeling of being tired, fatigued, or exhausted.  *Id.* at 6-7.  Mr. Chavez cites his hearing testimony wherein he testified to, *inter alia*, having problems with depression, concentration, right hand pain related to carpal tunnel syndrome, hypertension, sleep apnea, fatigue and anxiety.  *Id.*  Mr. Chavez cites several medical records evidencing his subjective complaints to healthcare providers, objective findings, and opinions regarding his ability to work.  *Id.*  Finally, Mr. Chavez argues that the ALJ found his obesity to be a severe impairment at step two but failed to discuss or consider the effect of Mr. Chavez's obesity on his ability to sustain physical and mental activity over time at step four.  Doc. 29 at 11-12.

The Commissioner contends that the ALJ explained why he found Mr. Chavez's allegations of disabling symptoms not supported by the evidence.  Doc. 35 at 12-16.  The Commissioner contends that the ALJ properly reviewed and discussed the evidence as to each of Mr. Chavez's severe impairments, considered the opinion evidence, and explained how the evidence supported his assessed RFC as he was required to do.  *Id.*  The Commissioner also contends that the ALJ specifically discussed Mr. Chavez's obesity and the requirements of SSR 19-2p.  *Id.*  In sum, the Commissioner contends that the ALJ reasonably concluded that Mr. Chavez could perform light work.  *Id.*

20

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[23]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that the ALJ's RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently

---

[23]  The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.  Mr. Chavez filed his claim on April 18, 2016.  Tr. 385-89.

articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

The Court finds no error with the ALJ's RFC assessment that Mr. Chavez is limited to a modified range of light work.  In doing so, the ALJ stated he considered Mr. Chavez's statements concerning the intensity, persistence, and limiting effects of his symptoms and found they were not entirely consistent with the evidence.  In support, the ALJ discussed the evidence associated with each of the impairments he determined to be severe at step two.  Tr. 23-25.  For example, the ALJ discussed that objective evidence supports Mr. Chavez's degenerative disc disease of the lumbosacral spine and that he reported at times experiencing mild back muscle tightness and limited lumbar range of motion.  Tr. 23.  The ALJ also discussed and pointed to evidence that physical exams showed normal gait and that Mr. Chavez had attended physical therapy which was helpful.[24]  *Id.*  The ALJ discussed Mr. Chavez's hypertension diagnosis and cardiac related diagnostics, and that several physical exams showed good heart and lung function.  *Id.*  He discussed that Mr. Chavez tolerated his prescribed medications and that his hypertension was noted as stable.  Tr. 24.  The ALJ discussed Mr. Chavez's obstructive sleep apnea and that healthcare providers had recommended lifestyle changes, losing weight, and the nightly use of a BiPAP device.  *Id.*  The ALJ noted that Mr. Chavez had undergone nasoseptal reconstruction and bilateral submucous resection of the inferior turbinates to help with his breathing.  *Id.*  The ALJ also noted that on December 17, 2020, Mr. Chavez reported his CPAP compliance was excellent and that his sleep issues and symptoms had significantly improved.  *Id.*

---

[24]  The ALJ noted elsewhere that Mr. Chavez reported during physical therapy on May 28, 2015, that he was lifting approximately 40-60 pounds at work.  Tr. 27, 688.

The ALJ discussed Mr. Chavez's depression and related symptoms of low energy, irritability and poor concentration.  Tr. 24-25.  The ALJ also discussed Mr. Chavez's counseling, reported improvement with medication therapy, and normal findings on mental status exams.  *Id.*  The medical evidence record supports these findings.  *See* Section III.A, *supra*.

The ALJ, therefore, considered and discussed the evidence to which Mr. Chavez cites and the Court will not reweigh it.  *See Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 808 (10th Cir. 2021) (setting out the reviewing court's standard of review, and noting that it does not "reweigh the evidence or retry the case").

In making his RFC assessment, the ALJ also evaluated and weighed the medical opinion evidence and provided explanations supported by substantial evidence for why they were not adopted.  *See* Section III.D., *infra*.

Specifically as to Mr. Chavez's obesity, Mr. Chavez argues that the ALJ failed to consider how Mr. Chavez's obesity contributes to his fatigue and his ability to sustain physical or mental work activity.  The Court disagrees.  Here, the ALJ acknowledged his duty to "assess the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment."  Tr. 23 (citing SSR 19-2p).  The ALJ also noted that obese persons may have limitations in the ability to sustain a function over time and that fatigue may affect a claimant's physical and mental ability to sustain work activity.  *Id.*  With that in mind, the ALJ specifically stated that

> [t]he Claimant's weight affects his ability to do exertional activities.  His doctors have stated that losing weight would help with his obstructive sleep apnea [].  They have recommended changes in lifestyle and weight reduction [].  The Claimant's obesity is severe in combination with degenerative disc disease of the lumbar spine, obstructive sleep apnea, and hypertension.  The combined effects of these conditions can be greater than the individual symptoms.

23

Tr. 23.  Moreover, Mr. Chavez fails to point to anything in the record affirmatively showing that his obesity in combination with his other *impairments* results in greater limitations than the ALJ assessed.  *See Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (unpublished) (finding no error in ALJ's analysis where claimant pointed to nothing in the record affirmatively showing "that her obesity alone, or in combination with other impairments, resulted in any further limitations"); *see also Razo v. Colvin*, 663 F. App'x 710, 716-17 (10th Cir. 2016) (finding no error where the ramifications of the claimant's obesity were "subsumed within the discussion of [his] other medical conditions," and where the ALJ "specifically addressed the impact of [his] obesity on his other impairments" and where the claimant failed to "discuss or cite to medical or other evidence to support his claim that his obesity was disabling.").

Instead, Mr. Chavez asserts that he has consistently provided evidence that he suffers fatigue, a symptom caused by his impairments and requiring twice daily naps, and that his treating physician "consistently stated that the medications he takes can contribute to fatigue."[25] Doc. 29 at 13 (emphasis added); *see* 20 C.F.R. § 404.1529(d)(1) (describing fatigue as a symptom).  In evaluating symptoms in disability claims, the ALJ is required to undertake a two-step analysis: (1) determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms, such as

---

[25] Mr. Chavez does not cite the record in making this assertion.  The Court's review indicates that on August 14, 2015, treating physician Dr. Mona Abousleman prepared a letter to Mr. Chavez's school, at his request, identifying his diagnoses.  Tr. 676.  She stated therein that Mr. Chavez's obstructive sleep apnea and hypertension, and the medications used to treat them, can affect his attention and level of fatigue and interfere periodically with his successful completion of schoolwork.  *Id.*  On January 8, 2016, Mr. Chavez requested another letter from Dr. Abousleman stating that his medical problems can contribute to poor focus and that he be given special testing accommodations.  Tr. 733.  The Administrative Record does not contain evidence of this letter, but in her treatment notes on that date Dr. Abousleman stated that Mr. Chavez has "multiple conditions that can cause fatigue" and agreed to prepare a letter.  Tr. 734.

pain; and (2) evaluate the intensity and persistence of claimant's symptoms to determine how these symptoms limit a claimant's ability to work.  20 C.F.R. § 404.1529(b)-(c)(1).  "In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ] examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  SSR 16-3, 2016 WL 119029, at *2.

Here, the ALJ found that Mr. Chavez's impairments could reasonably be expected to cause Mr. Chavez's complaints of low energy and fatigue but found his statements concerning the intensity, persistence and limiting effect not entirely consistent with the medical evidence.  In support, the ALJ discussed each of Mr. Chavez's impairments; noted mental status exams finding Mr. Chavez alert, cheerful and cooperative; indicated that Mr. Chavez engaged in online education for several hours each day;[26] that Mr. Chavez self-reported improvement of his depression when taking Lexapro;[27] and that as of December 17, 2020, Mr. Chavez had excellent compliance with CPAP use and reported that his sleep issues had improved significantly.[28]  The medical evidence record supports these findings.  *See* Section III.A, *supra*.

---

[26] On April 29, 2016, several months *after* Dr. Abousleman prepared letters to Mr. Chavez's school on his behalf, Mr. Chavez reported daily activities of attending online classwork from approximately 7:30 a.m. until 1:00 p.m., and 2:00 p.m. until 6:00 p.m.  Tr. 495-96.  On January 27, 2017, Dr. Abousleman noted that Mr. Chavez sits most of the day in front of the computer attending online classes.  Tr. 861-63.

[27] On April 8, 2020, Mr. Chavez reported that he had stopped Lexapro five months earlier.  Tr. 956.  He stated that he was less depressed and more relaxed when taking it, but stopped because he didn't want to be dependent on it.  *Id.*

[28] On March 19, 2020, Mr. Chavez presented to Pulmonologist James P. Bradley, M.D., for complaints of ongoing obstructive sleep apnea.  Tr. 1000-03.  Mr. Chavez reported depression, difficulty concentrating, headache and weight gain.  *Id.*  Dr. Bradley indicated obesity on physical exam.  *Id.*  Dr. Bradley diagnosed Class 3 severe obesity, essential hypertension and obstructive sleep apnea.  *Id.*  Dr. Bradley provided a new order for CPAP equipment, indicated

In sum, the Court finds no error with the ALJ's discussion of Mr. Chavez's obesity and in combination with his impairments when assessing Mr. Chavez's RFC. The Court further finds that the ALJ adequately addressed Mr. Chavez's alleged symptom of fatigue.

### C.      Mr. Chavez's Ability To Do Work-Related Mental Activities

Mr. Chavez next argues that the ALJ failed to account for the moderate limitations he found at step three in assessing Mr. Chavez's ability to do work-related activities at step four. Doc. 29 at 13-14. Mr. Chavez asserts that the ALJ found he was moderately limited in his ability to understand, remember and apply information, and in his ability to concentrate, persist, or maintain pace, but then failed to explain how these moderate limitations allow him to perform his past relevant work in the semi-skilled and skilled range. *Id.* Mr. Chavez argues that these moderate limitations are not accounted for in the RFC. *Id.*

The Commissioner contends that the ALJ's findings of moderate limitations in the paragraph B criteria at step three do not mandate certain findings in the mental RFC assessment. Doc. 35 at 17. That said, the Commissioner contends that the ALJ accounted for Mr. Chavez's mild to moderate limitations in the RFC and pointed out that Mr. Chavez admitted in his 2016 function report that he could engage in online education for several hours a day and had engaged in substantial gainful activity in 2017 as a semi-skilled customer service representative. *Id.* The

---

improved compliance was needed, and encouraged Mr. Chavez to achieve ideal body weight, exercise and maintain a healthy diet and sleep habits. Tr. 1003.

On December 16, 2020, Mr. Chavez saw Pulmonologist Sivakumar Nagaraju, M.D., and reported using the CPAP for 5 hours average at night and that compliance was excellent. Tr. 977-81. Mr. Chavez reported his symptoms related to his sleep issues had significantly improved. *Id.*

Commissioner asserts that even if there was error, it is harmless because the ALJ found that

Mr. Chavez could perform his past relevant work as a canvasser which is unskilled.  *Id.*

At steps two and three of the sequential evaluation process, the ALJ must determine

whether the claimant has a severe impairment that meets or equals one of the Listings.  20 C.F.R.

§§ 404.1520(a)(4)(ii)-(iii).  The ALJ must engage in a specific type of analysis if the claimant

argues that he has a mental impairment.  20 C.F.R. § 404.1520a(a).  The ALJ must identify and

evaluate the claimant's symptoms, *id.* § 404.1520a(b), then rate the degree of functional

limitation caused by any alleged mental impairments, *id.* § 404.1520a(c). The ALJ then

determines the severity of the mental impairments on a scale of none, mild, moderate, marked,

and extreme.  *Id.* § 404.1520a(d). The ALJ determines whether the functional limitations caused

by these impairments meets or equals a Listing at step three.  *See Grogan*, 399 F.3d at 1261.

At step three of the sequential evaluation process, the ALJ found, based on Mr. Chavez's

depression, that he suffered from moderate limitations in (1) his ability to understand, remember,

or apply information; and  (2) his ability to concentrate, persist, or maintain pace. Tr. 20-21.  In

turn, the ALJ included limitations in Mr. Chavez's ability to do work-related mental activities in

the RFC, *i.e.,* that Mr. Chavez "can understand, carryout and remember simple and detailed

instructions . . . and maintain concentration, persistence, and pace for up to and including two

hours at a time with normal breaks throughout an normal workday."  Tr. 22.  In doing so, the

ALJ discussed the opinion evidence related to Mr. Chavez's ability to do work-related mental

activities and the evidence from the record that supported his RFC assessment.  Thus, the Court

27

finds that the RFC properly accounted for the ALJ's step-three limitations.[29]  *See Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015) (recognizing that finding of a moderate difficulty in concentration, persistence, or pace at step three "does not necessarily translate to ... work-related functional limitation[s] for the purposes of the RFC assessment" and asking whether the RFC properly accounted for those step-three limitations); *see also Carver v. Colvin*, 600 F. App'x 616, 621 (10th Cir. 2015) (finding that the ALJ "fulfilled his obligation to further examine [at the RFC stage] the moderate 'paragraph B' limitation in concentration, persistence, or pace he found at step three").

### D.    Medical Opinion Evidence

Last, Mr. Chavez argues that the ALJ erred by failing to evaluate properly the medical opinion evidence.  Doc. 29 at 14.  Mr. Chavez asserts that the ALJ failed to provide good reasons for discounting treating source Dr. Abousleman's medical opinions, improperly speculated that Dr. Abousleman was merely stating Mr. Chavez's own subjective reports, and improperly discredited Dr. Abousleman's opinions for not using relevant terms.  *Id.* at 17.  Mr. Chavez asserts that the ALJ improperly rejected an opinion from LCSW Gilkey when a social worker's opinion can be considered under SSR 00-3p [sic].[30]  *Id.* at 17-18.  Finally, Mr. Chavez similarly

---

[29] The Social Security Administration correlates jobs with SVP 3-4 ratings to semiskilled work and jobs with SVP 1-2 ratings to unskilled work. Soc. Sec. Ruling (SSR) 00-4 ("unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4"), available at 2000 WL 1898704, at *3.

Here, the ALJ stated that "[t]hrough the date last insured, the Claimant was capable of performing past relevant work as a Canvasser and Customer Service Representative."  Tr. 28.  The Canvasser position has an SVP of 2 (unskilled); the Customer Service Representative has an SVP of 4 (semi-skilled).  *Id.*  The ALJ did not, as Mr. Chavez argues, determine that Mr. Chavez could do his past relevant skilled work, *i.e.,* as a loan officer (SVP 7) and mortgage loan interviewer (SVP 6).  *Id.*

[30] SSR 06-03p clarifies how the Administration considers opinions from sources who are not "acceptable medical sources."  See SSR 06-03P, 2006 WL 2329939.  SSR 06-03p explains that the weight given to this evidence will vary according to the particular facts of the case, the source of the opinion, the source's qualifications, the issues that the

argues that the ALJ failed to provide legitimate reasons for only according some weight to treating psychologist Esther Davis, Ph.D.'s opinion regarding Mr. Chavez's ability to do work-related mental activities. *Id.*

The Commissioner contends that the ALJ's explanations for discounting the opinion evidence are valid. Doc. 35 at18-24. The Commissioner contends that physician statements void of information about the nature and severity of a claimant's functional limitations, like those prepared in this case by Dr. Abousleman and LCSW Gilkey, are not considered medical opinions. *Id.* The Commissioner further contends that Dr. Abousleman's refusal to complete disability forms on Mr. Chavez's behalf underscores that Dr. Abousleman did not intend to assign work-related limitations. *Id.* The Commissioner contends that discounting physician statements on issues reserved to the Commissioner is also a valid basis for doing so. *Id.* The Commissioner also contends that the ALJ discussed and pointed to evidence in the record that was inconsistent and failed to support Dr. Abousleman's statements. The Commissioner similarly asserts that the ALJ considered LCSW Gilkey's statement and properly discounted it based on the lack of information it contained and LCSW Gilkey's opining on an issue reserved to the Commissioner. *Id.* Finally, the Commissioner asserts that the ALJ considered Dr. Davis's opinion, rendered after the date of last insured, and supported his finding that Dr. Davis's more extreme assessed limitations were not supported by the longitudinal medical evidence record. *Id.*

---

opinion is about, and other factors, *i.e.,* how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other facts that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5.

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions.[31]  *See* 20 C.F.R. § 416.927(c); *see also Hamlin,* 365 F.3d at 1215 ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.").  "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215 (citing *Goatcher v. United States Dep't of Health & Human Servs*., 52 F.3d 288, 290 (10th Cir. 1995)).[32]  An ALJ's decision need not expressly apply each of the six relevant factors in deciding what weight to give a medical opinion.  *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007).  However, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  The ALJ's decision for according weight to medical opinions must be supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).  An ALJ is required to give controlling weight to the opinion of a treating physician if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.*  Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining

---

[31] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017.  *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); (Doc. 19 at 4 n.3.).  Here, Mr. Chavez filed his application on April 18, 2016, before the new regulations were issued.

[32] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. § 416.927(c)(2)-(6).

consultant is given the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215.

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinion. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

The Court finds the ALJ applied the correct legal standards in weighing the opinion evidence and that his reasons for the weight he accorded are supported by substantial evidence. Dr. Abousleman, Mr. Chavez's treating physician since 2014, prepared three "To Whom It May Concern" letters on Mr. Chavez's behalf. She identified certain of Mr. Chavez's diagnoses and stated that they affected his ability to pay attention and level of fatigue and could periodically interfere with his school work, that they made it difficult for him to sit for prolonged periods of time or do physical labor, and that he was unable to work full or part time. The ALJ accorded either little or some weight to these letters explaining that Dr. Abousleman's opinions were too general and not useful; that Dr. Abousleman did not quantify "prolonged sitting" in vocationally

relevant terms; that Dr. Abousleman's statements were not supported by her physical exam findings; that Dr. Abousleman's statements were inconsistent with Mr. Chavez's own function report in which he reported engaging in online education for several hours per day and reported to Dr. Abousleman that he spends most of his day in front of a computer; and that Dr. Abousleman opined on an issue reserved for the Commissioner, *i.e.,* whether Mr. Chavez was disabled.

Mr. Chavez argues these are not good reasons and that the ALJ fails to consider that Dr. Abousleman's opinions are consistent with other substantial evidence in the record[33] and that she provided a longitudinal perspective not available in the objective medical findings.  Doc. 29 at 16-17.  Mr. Chavez argues it was speculation for the ALJ to explain that Dr. Abousleman's letters were based on Mr. Chavez's subjective reports.  *Id.*  Mr. Chavez also argues that use of the term "prolonged" is defined in the POMS as 2-hour segments of time and therefore is a vocationally relevant term.  *Id.*

The ALJ did not violate § 404.1527 in evaluating Dr. Abousleman's letters.  For example, the ALJ determined that Dr. Abousleman's first letter - that Mr. Chavez's sleep apnea and hypertension, and the medications used to treat them, "can affect his attention and level of fatigue" and "interfere periodically with his successful completion of schoolwork" - was too general and not useful under Social Security regulations.  The Court finds this determination to be legally adequate and well supported.  "A blanket statement of this nature, without further concrete elaboration as to *how* and *to what extent* a claimant's conditions and symptoms were

---

[33] Mr. Chavez asserts that LCSW Gilkey's opinion and Dr. Davis's marked limitations are consistent with Dr. Abousleman's statements regarding Mr. Chavez's ability to maintain employment. Doc. 29 at 15. For the reasons discussed herein, the Court finds no error with the ALJ's evaluation of LCSW Gilkey's and Dr. Davis's opinions.

'likely' to 'impact' [his] work-related activities, does not give the ALJ sufficient meaningful guidance in formulating an RFC that describes what the claimant can do despite [his] limitations." *See Montoya v. Kijakazi*, 2022 WL 525886, *7 (D.N.M. Feb. 22, 2022) (finding similar statement was vague and contained too little information about functional limitations to be of use).

The ALJ determined that Dr. Abousleman's second and third letters – that Mr. Chavez's medical problems made it difficult for him to sit for prolonged periods of time, do physical labor, work on a computer multiple hours daily, and make him unable to work in a full or part time setting – were not expressed in vocationally relevant terms, were not supported by the record, and opined on an issue reserved for the Commissioner.  Although there may be value in having medical opinions framed in vocationally relevant language, the Court agrees that ALJs generally do not struggle to ascribe meaning to terms like "prolonged" to describe the nature and severity of impairments.  That said, the ALJ did not rely on this explanation alone, but also cited contrary well-supported evidence from the record for discounting Dr. Abousleman's statements.  Further, having evaluated the record evidence to determine if the opinions were supported, as he was required to do, the ALJ correctly noted that Dr. Abousleman opined on an issue reserved to the Commissioner.  *See* SSR 96-5P, 1996 WL 374183, at *3 (explaining that treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance but must never be ignored, and that the adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability and determine the extent to which the opinion is supported by the record).  Thus, the ALJ did not ignore Dr. Abousleman's letters and determined they were not supported by the record.  The Court, therefore, finds no error.

Mr. Chavez next argues that the ALJ improperly rejected LCSW Gilkey's opinion because the opinions of social workers can be considered under SSR 06-3p and because the opinion is consistent with the other substantial evidence of record, even if specific symptoms are not listed. Doc. 29 at 17-18. The Court finds no error in the ALJ's evaluation of LCSW Gilkey's opinion. As the ALJ explained in considering this opinion, LCSW Gilkey's narrative did not describe Mr. Chavez's symptoms or provide a rationale for his discharge. These are legitimate reasons for rejecting LCSW Gilkey's opinion.[34] LCSW Gilkey's narrative also did not contain an assessment of the nature or severity of Mr. Chavez's mental limitations or any information about what type of activities he could perform, and instead opined on an issue reserved to the Commissioner. *See Cowan v. Astrue,* 552 F.3d 1182, 1189 (10th Cir. 2008) (explaining that a brief statement on the medical form was not a true medical opinion where it did not contain treating physician's judgment about the nature and severity of claimant's physical limitations, or any information about what activities claimant could still perform, and merely stated that the doctor did not know if claimant would be able to return to work, which is an issue reserved to the Commissioner); *see also generally Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.1994) ("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings.").

Last, Mr. Chavez argues that the ALJ failed to properly evaluate Dr. Davis's opinion. Doc. 29 at 18-19. Mr. Chavez argues that the ALJ failed to apply the two-part inquiry when evaluating a treating physician opinion. *Id.* He also argues that Dr. Davis's treatment notes

---

[34] *See* fn. 30, *supra.*

revealing ongoing problems with current and past relationships and ongoing suicidal ideation support her assessment of Mr. Chavez's limitations with respect to doing work-related mental activities.  *Id.*  Mr. Chavez further argues that he did not continue online school due to the problems with fatigue and focus and needed Dr. Abousleman to write a letter supporting accommodations at school.  *Id.*  Last, he argues that the ALJ failed to incorporate Dr. Davis's findings despite giving her opinion some weight.

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  As to the first step, "[a]n ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.... If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004)).  "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Krauser*, 638 F.3d at 1330.  However, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given ... and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* (emphasis added).

Here the ALJ does not affirmatively state that Dr. Davis's opinion is not entitled to controlling weight at the first step.  However, the Tenth Circuit has indicated that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling

weight," there is no ground for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

Thus, the ALJ's decision to ascribe Dr. Davis's opinion "some weight" arguably shows that he

implicitly declined to give it controlling weight and there is no error.

Further, the ALJ considered the relevant regulatory factors in weighing Dr. Davis's

opinion and provided reasons that are sufficiently specific and supported by substantial evidence

for the weight he accorded.  For instance, the ALJ identified Dr. Davis as a treating psychologist

and discussed the length of the treatment relationship.  Tr. 27.  The ALJ also discussed why

Dr. Davis's marked limitations were inconsistent with the medical evidence record, *i.e.,*

numerous mental status exams finding Mr. Chavez alert, cheerful and cooperative with no

evidence of significant deficits in his memory, attention, or concentration; Mr. Chavez's ability

to engage in online education for several hours each day;[35] and Mr. Chavez' self-reported

improvement of his depression when taking Lexapro.  *Id.*  The ALJ also discussed that

Mr. Chavez reported in his Function Report that he drives, goes out alone, and shops in stores.[36]

Tr. 20.  The record supports these findings.  Finally, the Court finds that the ALJ, having

accorded *some weight* to Dr. Davis's opinion, incorporated limitations related to Mr. Chavez's

ability to do work-related mental activities explaining that the overall record tends to support

mild to moderate, rather than marked limitations.  Thus, Mr. Chavez's argument that the ALJ

failed to incorporate any of Dr. Davis's findings despite giving it some weight necessarily fails.

---

[35] Mr. Chavez argues that he did not continue online school due to problems with fatigue and focus and requested Dr. Abousleman write letters to support accommodations at school.  Mr. Chavez does not cite the record to support this assertion and the Court can find no supporting evidence in the Administrative Record.  *See* fn. 26, *supra*.

[36] Mr. Chavez reported going out four or five days a week to run errands and go to school, watching  television every day, reading the newspaper three times a week, playing the piano twice per week, and attending church services on Wednesday and Sunday each week.  Tr. 499-500.

In sum, the Court finds no error with the ALJ's evaluation and weighing of the medical opinion evidence.

## IV.  <u>Conclusion</u>

For the reasons stated above, Mr. Chavez's Motion for Remand (Doc. 29) is **DENIED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**